## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, DISTRICT COUNCIL 47, HEALTH AND WELFARE FUND; and<br><br>1199SEIU NATIONAL BENEFIT FUND; 1199SEIU GREATER NEW YORK BENEFIT FUND; 1199SEIU NATIONAL BENEFIT FUND FOR HOME CARE WORKERS; 1199SEIU LICENSED PRACTICAL NURSES WELFARE FUND,<br><br>on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>  vs.<br><br>TARO PHARMACEUTICALS USA, INC;<br><br>TARO PHARMACEUTICALS INC.;<br><br>TARO PHARMACEUTICALS INDUSTRIES LTD.;<br><br>SUN PHARMACEUTICALS INDUSTRIES LTD.;<br><br>SUN PHARMA HOLDINGS;<br><br>ALKALOIDA CHEMICAL CO. ZRT;<br><br>THE TARO DEVELOPMENT CORP.; and<br><br>LIBRA MERGER LTD.,<br><br>       Defendants. | Civil Action No. _____<br><br><br>**CLASS ACTION** |

## **COMPLAINT**

Plaintiffs American Federation of State, County and Municipal Employees, District

Council 47, Health and Welfare Fund ("DC 47") and 1199SEIU National Benefit Fund,

1199SEIU Greater New York Benefit Fund, 1199SEIU National Benefit Fund for Home Care

Workers, and 1199SEIU Licensed Practical Nurses Welfare Fund (collectively, "1199SEIU

Benefit Funds"), (collectively, "Plaintiffs"), bring this action on behalf of a class of end-payer

plaintiffs ("EPPs") (the "EPP Creditor Class," as defined below) for a judgment that the transfer

of assets and incurrence of obligations by Taro Pharmaceuticals USA Inc. ("Taro USA") to

Defendants Taro Pharmaceuticals Inc. ("Taro Canada"), Taro Pharmaceuticals Industries Ltd.

("Taro Israel"), Sun Pharmaceutical Industries Ltd. ("Sun Pharma"), Sun Pharma Holdings

("SPH"), Alkaloida Chemical Co. ZRT ("Alkaloida"), The Taro Development Corp. ("TDC"),

and Libra Merger Ltd. ("Taro Merger Sub"), constitute voidable transactions under the New

York Voidable Transactions Act. Plaintiffs also bring this action against Defendants for civil

conspiracy, to pierce the corporate veil, and successor liability.

## NATURE OF THE ACTION

1.      Plaintiffs, creditors of Taro USA, bring this action to recover the value of

fraudulent transfers that Taro USA and its parent entities made to Sun Pharma to hinder, delay,

and defraud Plaintiffs and similarly situated persons from recovering billions of dollars owed to

them because of Taro USA's illegal conduct in the pricing of generic pharmaceuticals.

2.      This action involves a set of circumstances that are as old as legal liability for

money damages: a debtor facing a lawsuit transfers its assets and incurs obligations to a friendly

person without receiving equivalent value in return, leaving the debtor insolvent so that the

debtor's creditors cannot collect on their claims. For nearly five centuries, the law has provided

remedies for creditors against this behavior in the form of fraudulent transfer statutes. Here,

Plaintiffs sue under New York's current version of that statute, a statute that applies to fraudulent

transfers made by an entity that, like Taro USA, has its chief executive office located in that

state. Plaintiffs bring this action in this District because of its liabilities in a multidistrict

proceeding pending in this District that Taro USA is attempting to evade.

3.      As alleged below, Plaintiffs represent a proposed class of end payers ("End-Payer Plaintiffs" or "EPPs") who filed complaints against Taro USA and other defendants between 2016 and 2019. Those actions are pending in a consolidated multidistrict proceeding before the Honorable Cynthia M. Rufe, in the U.S. District Court for the Eastern District of Pennsylvania, *In re: Generic Pharmaceuticals Pricing Antitrust Litigation., MDL No. 2724 (the "Generic Drug Antitrust MDL"). Each EPP complaint alleges injuries arising from Taro USA's unlawful anticompetitive conduct that caused higher prices for generic drugs and unjustly enriched Taro USA and its parent entities ("Taro EPP Complaints"). In addition to the EPPs' claims, Taro USA is a defendant in related actions brought by state attorneys general and other plaintiffs.

4.      There is little doubt that EPPs will establish that Taro USA entered into unlawful and anticompetitive agreements concerning at least five drugs at issue **because Taro USA already has admitted to it** in a Deferred Prosecution Agreement ("DPA") with the United States Department of Justice ("DOJ"). Co-conspirator Sandoz Inc. also entered into a DPA with DOJ and has admitted to conspiring with Taro USA. In federal criminal proceedings, a former high-ranking executive Sandoz Inc. admitted to participating in a conspiracy to fix generic pharmaceutical prices with Taro USA. Documentary evidence and testimony of numerous witnesses confirm the existence of the conspiracies.

5.      Taro USA is facing huge financial liability in connection with these actions. Taro USA already has incurred approximately $419 million dollars in criminal penalties and settlements with the U.S. federal government. And those resolutions covered just a small fraction of the drugs at issue in the *Generic Drug Antitrust* MDL and over a shorter time period than at issue in those actions.

6.      Notably, Taro USA's criminal penalties and settlements with the federal

government were paid by its parent, Taro Israel. Taro Israel also publicly disclosed that it had reserved additional cash to pay claims by other parties, including EPPs. This stands to reason, as the enterprise value of the Taro entities was derived primarily through sales in the USA through Taro USA. Thus, EPPs were comforted by Taro USA's and Taro Israel's conduct and public disclosures that it expected and intended to cover civil liabilities arising from its criminal price-fixing conduct in the USA.

7.      That changed on June 24, 2024. Faced with this inescapable civil liability, Taro USA—in cooperation with its parents, affiliates, and related corporate entities—engaged in a series of transactions designed to put its assets out of reach of its litigation creditors in ways that unacceptably contravene the norms of creditors' rights.

8.      On June 24, 2024, Sun Pharma merged with Taro Israel (and thus acquired Taro subsidiaries, including Taro USA). Prior to June 24, 2024, Taro Israel was an independent, publicly held company that was majority owned, but not wholly owned, by Sun Pharma. Upon completion of the merger, Taro Israel and its subsidiaries became private companies wholly owned by Sun Pharma. After the merger with Sun, Taro was de-listed from the New York Stock Exchange.

9.      Over the decade since Taro USA admitted to beginning its illegal price-fixing (*i.e.*, March 2013), the Taro entities "generated $2.4 billion of cash in the 10 years ended March 31[, 2023]",[1] predominantly arising from sales in the United States by Taro USA. As Taro USA sold generic pharmaceuticals, its profits, including the illegal profits that arose from the

---

[1] July 19, 2023 Press Release, "Krensavage Asset Management Opposes Sun's Lowball Bid for Taro," available at: https://www.prnewswire.com/news-releases/krensavage-asset-management-opposes-suns-lowball-bid-for-taro-301880370.html.

conspiracy alleged in EPPs' complaints, were rolled up to Taro Canada, then to Taro Israel's global operations.

10.    As of March 31, 2024, which is the date of the last public financial disclosure by Taro entities before the Sun/Taro merger was announced, Taro Israel had assets of $1.87 billion, primarily derived from the value of its subsidiaries.[2] Taro Israel and its subsidiaries had more than $700 million in cash and cash equivalents on hand.[3] Taro financial disclosures reveal that as much as 80% of Taro global revenue arose from sales by Taro USA.[4] Thus, nearly all of the value in the Taro family of companies arose from Taro USA.

11.    Although Sun Pharma already was the majority owner of Taro Israel, Taro Israel remained a separate, publicly listed company. By merging with Taro and taking all Taro entities private, Sun Pharma gained full control over the Taro entities and the hundreds of millions of dollars of cash on hand, which was generated primarily by Taro USA. Once the Taro entities were private, Sun Pharma obtained the ability, in the words of Chairman and majority owner, Dilip Shanghvi, "to create an integrated single organization both for customers as well as suppliers."[5]

12.    The merger was intended, at least in part, to enable Sun Pharma to capture the accumulated value in the Taro entities while escaping the liabilities incurred by those entities arising from Taro USA's criminal conduct. Whereas in the past, Taro Israel—a publicly listed company worth nearly $2 billion—publicly indicated that it expected and intended to cover the

---

[2] Taro Israel 2024 Balance Sheet available at: https://sunpharma.com/wp-content/uploads/2024/07/Taro-Pharmaceutical-Industries-Ltd.pdf

[3] Taro Canada 2024 Balance Sheet available at: https://sunpharma.com/wp-content/uploads/2024/07/Taro-Pharmaceuticals-Inc.pdf

[4] Taro Israel 2021 Annual Report at p. 26, available at: https://www.annualreports.com/HostedData/AnnualReportArchive/t/NYSE_TARO_2021.pdf

[5] Sun Pharma Aug. 1, 2024 Earnings Call.

liabilities incurred by Taro USA, there is no such assurance after the Sun/Taro merger. By consolidating Sun and Taro into an "integrated single organization" the value generated by Taro USA, and the cash and obligation of Taro Israel to ensure the continued viability of Taro USA have vanished. Taro Israel, Taro USA and related entities, effectively no longer exist. All of Taro's value—most of which was derived from Taro USA—has been subsumed into Sun Pharma. As Dr. Abhishek Sharma, Sun Pharma Vice President and Head of Investor Relations and Strategic Projects, explained during a Sun Pharma earnings call on Jan. 31, 2025, "we don't talk about Taro separately [from Sun]." The nominal defendant in the *Generic Drug Antitrust MDL*—Taro USA—is now effectively a defunct shell with no backstop from its Taro parent companies, and no intention by Sun Pharma to cover Taro's debts to Plaintiffs.

13.    As described below, the Sun/Taro merger transactions (the transfers made, the obligations undertaken, and the ongoing restructuring of Taro) were made with the actual intent to hinder, delay, and defraud Plaintiffs and the other EPPs, were without reasonably equivalent value in exchange and left Taro USA insolvent, with assets that, at a fair valuation, are worth less than the sum of its debts, including the claims of the EPPs. In undertaking the merger, Defendants intended to capture the value accumulated by and remaining in Taro USA, in the form of the ongoing sales and the accumulated cash and cash equivalents stored in Taro Canada and Taro Israel, while abandoning the obligation by those Taro entities to pay the debts owed to injured parties arising from Taro USA's criminal conduct. Defendants knew (or reasonably should have known) that Taro USA would be unable pay its debts to EPPs as they came due. Moreover, these transfers were made to Sun Pharma and related entities while Taro USA was insolvent, which Sun Pharma and the related entities knew or had reasonable cause to believe.

14.    In this action, Plaintiffs seek remedies on behalf of themselves and similarly

situated creditors of Taro USA, Taro Canada and Taro Israel, including (1) avoidance of the transfers and obligations to the extent necessary to satisfy their claims against Taro USA; (2) an attachment or other provisional remedy against the assets transferred and other property of the transferees; (3) an injunction against further disposition by Taro USA, Taro Canada or Taro Israel, or the transferees of the assets transferred or of other property; (4) declaratory judgment that Taro USA, Taro Canada and Taro Israel operated as an integrated enterprise without respect to corporate formalities; (5) declaratory judgment that Sun Pharma is the successor in interest to Taro USA and is liable to EPPs for their injuries alleged in the *Generic Drug Antitrust* MDL, and (6) any other relief the circumstances of this case may require. Plaintiffs also seek to hold all Defendants jointly and severally liable for the debts owed by Taro USA to EPPs under theories of civil conspiracy, piercing the corporate veil, alter ego liability, and as successors in interest to Taro USA, Taro Canada and Taro Israel.

## **PARTIES**

15.     Plaintiff American Federation of State, County and Municipal Employees, District Council 47, Health and Welfare Fund ("DC 47") is an employee welfare benefits fund that provides health benefits to over 10,000 participants and their eligible dependents. It is headquartered in Philadelphia, Pennsylvania. DC 47 is a plaintiff and proposed representative of the EPP classes in the *Generic Drug Antitrust* MDL. DC 47 is a creditor of Taro USA, Taro Canada, and Taro Israel as that term is defined in NY Debt & Cred L § 270 (2024) and is a "present creditor" at the time of the fraudulent transfers alleged here within the meaning of NY Debt & Cred L §§ 273 & 274.

16.     Plaintiffs 1199SEIU National Benefit Fund, 1199SEIU Greater New York Benefit Fund, 1199SEIU National Benefit Fund for Home Care Workers, and 1199SEIU Licensed Practical Nurses Welfare Fund are jointly administered health and welfare funds (collectively,

"1199SEIU Benefit Funds"). The 1199SEIU Benefit Funds are among the largest labor-management funds in the nation, providing comprehensive health benefits to hundreds of thousands of working and retired healthcare industry workers and their families. They provide health and welfare benefits to 400,000 members, retirees, and their families. The 1199SEIU Benefit Funds are plaintiffs and proposed representatives of the EPP classes in the *Generic Drug Antitrust* MDL. The 1199SEIU Benefit Funds are creditors of Taro USA, Taro Canada and Taro Israel as that term is defined in NY Debt & Cred L § 270 (2024) and are "present creditor[s]" at the time of the fraudulent transfers alleged here within the meaning of NY Debt & Cred L §§ 273 & 274.

17.     Defendant Sun Pharmaceuticals Industries Ltd. ("Sun Pharma") is a is an international, integrated, pharmaceutical company organized under the laws of India. Sun Pharma's principal executive offices are located at Sun House, Plot No. 201 B/1Western Express Highway, Goregaon East, Mumbai, Maharashtra, India—400 063. At all relevant times, Sun Pharma was majority owned and controlled by Dilip Shanghvi.

18.     Defendant Sun Pharma Holdings ("SPH") is a corporation formed under the laws of Mauritius and is a subsidiary of defendant Sun Pharma. SPH's principal executive offices are located at c/o Rogers Capital Corporate Services Limited, 3rd Floor, Rogers House, No. 5 President John Kennedy Street, Port Louis, Mauritius. SPH is a party to the merger agreement between Sun Pharma and the Taro entities.

19.     Defendant Alkaloida Chemical Co. ZRT ("Alkaloida") is a company formed under the laws of Hungary and is a subsidiary of defendant Sun Pharma. Alkaloida's principal executive offices are located at Kabay János u. 29, H-4440 Tiszavasvari, Hungary. Alkaloida is a party to the merger agreement between Sun Pharma and the Taro entities.

20.     Defendant Libra Merger Ltd. ("Taro Merger Sub") is an Israeli company wholly owned by defendants Alkaloida, TDC and SPH and controlled by defendant Sun Pharma. Taro Merger Sub was formed solely for the purpose of engaging in the acquisition of Taro. Taro Merger Sub is a party to the merger agreement between Sun Pharma and the Taro entities.

21.     Defendant The Taro Development Corp. ("TDC") is a company formed under the laws of New York and is a subsidiary of Sun Pharma. TDC's principal executive offices are located at c/o Taro Pharmaceutical USA, Inc., 3 Skyline Drive, Hawthorne, NY 10532, USA. TDC is a party to the merger agreement between Sun Pharma and the Taro entities.

22.     Defendant Taro Pharmaceuticals Industries Ltd. ("Taro Israel") is an integrated pharmaceutical company organized under the laws of Israel. After the Sun/Taro merger on June 24, 2024, Taro Israel became a subsidiary of defendant Sun Pharma. At all relevant times, Taro Israel was controlled by defendant Sun Pharma and by Dilip Shanghvi. Taro Israel's principal executive offices are located at 14 Hakitor Street, Haifa Bay 2624761, Israel.

23.     Defendant Taro Pharmaceuticals Inc. ("Taro Canada") is a company organized under the laws of Canada. It is a wholly owned subsidiary of Taro Israel. After the Sun/Taro merger on June 24, 2024, Taro Canada became a subsidiary of defendant Sun Pharma. At all relevant times, Taro Canada was controlled by defendant Sun Pharma and by Dilip Shanghvi. Taro Canada's principal offices are located at 130 East Dr, Brampton, ON L6T 1C1, Canada.

24.     Defendant Taro Pharmaceuticals USA Inc. ("Taro USA") is a New York company. It is a subsidiary of defendants Taro Canada and Taro Israel. After the Sun/Taro merger on June 24, 2024, Taro USA became a subsidiary of defendant Sun Pharma. At all relevant times, Taro USA was controlled by defendant Sun Pharma and by Dilip Shanghvi. Taro USA's principal executive offices are located at 3 Skyline Drive, Hawthorne, NY 10532, USA.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the EPP Creditor Class contains more than 100 persons, the aggregate amount in controversy exceeds $5,000,000, and at least one member of the EPP Creditor Class is a citizen of a state different from Defendants Taro USA and TDC, both citizens of New York, and Defendants Sun Pharma, SPH, Alkaloida, Taro Merger Sub, Taro Israel, Taro Canada, all of which are citizens of a foreign state.

26.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim herein occurred in this District. Specifically, the voidable transfers that are the subject of this Complaint were made to prevent or impede the EPP Creditor Class from recovering on claims against Defendants in multidistrict litigation pending in this District, which arise from injuries suffered by Plaintiffs and other members of the EPP Creditor Class in connection with payments and/or reimbursements they made in this District for drugs impacted by Taro's unlawful conspiracies.

27.     This Court has personal jurisdiction over the parties, as Plaintiffs' claims directly arise from Taro USA's status as a defendant in the *Generic Drug Antitrust* MDL and Plaintiffs' status as creditors of Taro USA, Taro Canada, Taro Israel, and Sun Pharma. Additionally, all Defendants engaged in conduct to (1) funnel the ill-gotten gains of Taro USA at issue in the *Generic Drug Antitrust* MDL to themselves to the detriment of the EPP Creditor Class, and (2) transfer the value generated by and arising from Taro USA to Taro Canada, Taro Israel, and eventually to Sun Pharma and affiliated Sun entities. In light of their purposeful actions to undermine the claims at issue in this forum, all Defendants "should reasonably anticipate being haled into court" here. Finally, as the alter egos and/or successors in interest of Taro USA, Defendants have inherited Taro USA's status for purposes of specific personal jurisdiction.

## FACTUAL ALLEGATIONS

### *The Underlying Litigation Claims*

28.     This case, like numerous other wrongful efforts to put assets outside the reach of creditors, was designed to evade the payment of litigation liabilities. Plaintiffs and other proposed class members hold a claim against Taro USA, Taro Canada and Taro Israel in the form of an unliquidated right to payment for damages. By virtue of their claims against Taro entities, Plaintiffs and the proposed class members are creditors of these Taro entities within the meaning of NY Debt & Cred L § 270. Taro USA, Taro Canada and Taro Israel are liable on these claims. By virtue of this liability, these Taro entities are debtors within the meaning of NY Debt & Cred L § 270. Because Sun Pharma and related affiliates are successors in interest and/or alter egos to Taro USA, Taro Canada and/or Taro Israel after the Sun/Taro merger, EPPs also are creditors of Sun Pharma, which is a debtor of EPPs, within the meaning of NY Debt & Cred L § 270.

29.     As alleged in the complaints in the *Generic Drug Antitrust* MDL, Taro USA and other generic pharmaceutical companies entered into anticompetitive and illegal agreements to raise prices and minimize competition in the generic drug industry for numerous generic drugs beginning at least as early as 2009. The conspiratorial conduct involving Taro USA and other generic drug manufacturers was widespread and criminal in nature. Throughout the conspiracy, these manufacturers communicated with each other to reach agreements to fix generic drug prices.

30.     The Antitrust Division of the U.S. Department of Justice ("DOJ") has criminally charged or entered deferred prosecution agreements ("DPA") with Taro USA and six other generic drug manufacturers.

31.     When it was announced, the $205.6 million criminal penalty Taro USA agreed to pay was the largest ever imposed by the DOJ for a domestic antitrust case. In its DPA, Taro USA admitted that from March 2013 and continuing until in or about December 2015, Taro USA "conspired to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, certain generic drugs in the United States."[6] Taro USA admitted as part of the DPA that "Taro U.S.A.'s sales of generic drugs affected by these conspiracies totaled at least $524,625,555."

32.     On October 1, 2021, the DOJ also announced that it had entered into civil settlements with Taro USA to resolve alleged violations of the False Claims Act arising from conspiracies to fix the price of various generic drugs.[7] As part of its settlement, Taro USA agreed to pay $213.2 million. In total, Taro USA agreed to pay the DOJ approximately $419 million for the criminal charges and civil claims involving generic drugs.

33.     In discovery in the *Generic Drug Antitrust* MDL, several former employees from Sandoz Inc.—another generic drug manufacturer that entered into a DPA with the DOJ and which has admitted to conspiring with Taro USA, among others, to fix the prices of generic drugs—have testified that the agreements between Sandoz and Taro USA went well beyond what Sandoz and Taro USA admitted to in their criminal resolutions. Taro USA's potential exposure for the claims in the *Generic Drug Antitrust* MDL substantially exceeds the $419 million that Taro entities already have paid to the DOJ.

---

[6] *United States v. Taro Pharmaceuticals USA, Inc.*, Crim. 20-CR-214 (E.D. Pa.), Deferred Prosecution Agreement (July 23, 2020), available at: https://www.justice.gov/atr/case-document/file/1307141/dl?inline.

[7] U.S. Dep't of Justice, Press Release, *Pharmaceutical Companies Pay Over $400 Million to Resolve Alleged False Claims Act Liability for Price-Fixing of Generic Drugs* (Oct. 1, 2021), https://www.justice.gov/opa/pr/pharmaceutical-companies-pay-over-400-million-resolve-alleged-false-claims-act-liability.

34.     Starting in March 2016, EPPs filed a series of class actions against several generic drug manufacturers, including Taro USA, alleging an unlawful conspiracy to fix the prices of various generic drug products. Other complaints were soon filed on behalf of a class of direct purchaser plaintiffs and other plaintiff groups. In 2017, attorneys general filed a complaint against Taro and other manufacturers alleging an overarching conspiracy to fix the prices of more than a dozen drugs. These actions and subsequently filed actions were transferred by the Judicial Panel for Multidistrict Litigation to the U.S. District Court for the Eastern District of Pennsylvania as part of the *Generic Drug Antitrust* MDL.

35.     The EPP complaints against Taro USA in the *Generic Drug Antitrust* MDL include allegations involving dozens of Taro drugs, substantially more than at issue in the DOJ criminal and civil resolutions. Additionally, the EPPs' damage claims against Taro USA run through 2018, three years beyond the allegations Taro USA admitted as part of its criminal resolution.

36.     EPPs estimate that Taro USA, Taro Canada and Taro Israel pocketed billions of dollars in overcharges from sales of price-fixed drugs that ultimately were paid for by EPPs, *i.e.*, consumers, insurers, private businesses, and state and local governments, through 2018.

***Before the Merger with Sun Pharma, Taro Operated as an Integrated Company***

37.     Before the June 24, 2024 Sun/Taro merger, the Taro entities (Taro Israel, Taro Canada and Taro USA) operated as a fully integrated, single enterprise without regard to corporate formalities. For all practical purposes, Taro Israel exercised control over the actions of Taro USA and Taro Canada, including decisions related to the manufacture, sale and pricing of the generic drugs at issue in the *Generic Drug Antitrust* MDL.

38.     Prior to the Sun/Taro merger, Taro USA was 100% owned by Taro Canada, which in turn was 100% owned by Taro Israel. All of the Taro entities' revenues and financial successes were rolled up into the financial results of Taro Israel's global operations, with the ultimate objective of transferring value and profits to the Taro organization as a whole, including the illegal profits that arose from the conspiracy alleged in EPPs' complaints.

39.     Taro USA, Taro Canada and Taro Israel regularly engaged in insider transactions.[8]

40.     Taro Israel treated the assets and profits of Taro Canada and Taro USA as if they were its own assets and profits, thus effectively commingling assets across the Taro enterprise.

41.     Taro USA, Taro Canada and Taro Israel shared essential and centralized corporate functions, including, for example, Human Resources and Information Technology.

42.     The executive leadership and directors of the Taro entities overlapped at all relevant times. For example, the CEO of Taro Israel also acted at the CEO of Taro USA. Taro USA did not have separate CEO leadership and instead was controlled by Taro Israel.

***Direct Involvement of Taro Israel Executives in the Pricing of Generic Drugs by Taro USA***

43.     Executive leadership at Taro Israel was regularly involved in the operations of Taro USA and Taro Canada.

44.     Executive leadership at Taro Israel, including the CEO and Chairman, were regularly involved in decisions about the management of the company, and the sale and pricing of generic drugs sold in the United States by Taro USA, including drugs at issue in the *Generic*

---

[8] *See, e.g.*, Taro 2023 Annual Report discussing "Related Party Transactions," available at: https://www.annualreports.com/HostedData/AnnualReports/PDF/NYSE_TARO_2023.pdf

*Drug Antitrust* MDL, and including drugs identified in Taro USA's deferred prosecution agreement with the U.S. Department of Justice.

***Sun Pharma and Dilip Shanghvi Controlled Taro USA, Taro Canada and Taro Israel***

45.    Before the Sun/Taro merger, the Taro entities were controlled and dominated by Sun Pharma and Dilip Shanghvi.

46.    Dilip Shanghvi is the founder of defendant Sun Pharma and has served as its Managing Director since its inception in 1993. Mr. Shanghvi, as the Managing Director of Sun Pharma's board of directors and along with entities controlled by him and members of his family, controls 54.5% of Sun Pharma. Mr. Shanghvi also has served as a director of defendant Taro Israel since September 2010. He also became the Chairman of the Board of Taro Israel in August 2013, after previously serving as the Chairman from September 2010 to April 2012.

47.    Beginning in 2010, Sun Pharma was the majority shareholder of the Taro entities and has at all relevant times controlled a majority of the voting rights in the Taro entities.

48.    During all relevant times, executive leadership at the Taro entities overlapped with executives and/or directors at Sun Pharma.

49.    During all relevant times, Sun Pharma and Taro engaged in insider transactions.[9]

50.    During the relevant period, Taro USA generated excess cash, including from the sale of price-fixed drugs at issue in the *Generic Drug Antitrust* MDL, which was used by Taro Israel to buy-back publicly listed shares of Taro Israel, which served to increase the ownership share of Sun Pharma in the Taro entities.

---

[9] *See supra* n.8.

***The Fraudulent Merger***

51.     In May 2023, Sun Pharma announced its intention to acquire 100% ownership of Taro Israel. At the time of the announcement, Sun Pharma already owned approximately 78.5% of the Taro enterprise.

52.     Because Sun Pharma already owned the majority of Taro and announced that it would not consider selling its stake in the enterprise, there was no viable market for alternative or competing purchasers of Taro.[10] This had the effect of depressing the value of Taro to the benefit of Sun Pharma.

53.     In negotiations between Sun Pharma and Taro Israel, Sun Pharma asserted that the value of Taro should be discounted because of the liabilities owed to creditors, ***including EPPs***, arising from Taro USA's criminal price-fixing conduct.[11] Sun Pharma thus recognized that Taro Israel was responsible for the debts owed by Taro USA arising from the *Generic Drug Antitrust* MDL and insisted that those liabilities be considered in valuing Taro Israel for purposes of the merger with Sun Pharma.

54.     To effectuate the merger between Sun Pharma and Taro Israel, Sun Pharma utilized a series of transactions among Defendants, all of which are affiliates of Sun Pharma within the meaning of NY Debt & Cred L § 270, and also are insiders within the meaning of NY Debt & Cred L § 270.

55.     At the time of the merger, all Defendants shared overlapping executives and/or directors.

56.     Sun Pharma created the Taro Merger Sub, which it controlled and dominated, as it

---

[10] *See* Taro Merger Proxy Statement, available at:
https://www.sec.gov/Archives/edgar/data/906338/000119312524095448/d762369dex99a3i.htm
[11] *Id.*

did with all other Defendants. The director of the Taro Merger Sub that signed the Sun/Taro merger agreement simultaneously served as the General Counsel at Taro Israel and the General Counsel at Sun Pharma.

57.    The CEO of Taro Israel, who simultaneously served on the Core Management Team of Sun Pharma, signed the merger agreement on behalf of Taro Israel.

58.    The Sun/Taro merger agreement was signed on behalf of defendant TDC by the brother-in-law of Dilip Shanghvi, who simultaneously served as a director of: (a) Sun Pharma; (b) Alkaloida; (c) SPH; (d) Taro Israel; and (e) Taro USA.

59.    The Sun/Taro merger agreement was signed on behalf of defendant SPH by an individual who simultaneously served as an executive at Sun Pharma.

60.    After the merger, Taro Israel (along with Taro Canada and Taro USA) became wholly owned and controlled by Sun Pharma. The Taro entities became direct wholly owned subsidiaries of defendants Alkaloida, TDC and SPH.

***The Merger Leaves Taro USA Undercapitalized and Unable to Pay Its Creditors***

61.    As described above, Taro Israel operated at all relevant times as a fully integrated enterprise. Taro USA served as the sales arm and main economic engine for the entire Taro global operations.

62.    Notwithstanding that the vast majority of value in the Taro enterprise was derived by and through Taro USA, as a bookkeeping matter, Taro Israel ran Taro USA without showing any profits in most years for Taro USA. For example, in Taro's last public financial disclosure before the Sun/Taro merger, although Taro USA showed gross profits of approximately $94

million, the company reported a net loss of approximately $34 million.[12] Similarly, while Taro USA reported assets in excess of $1.4 billion, the overall valuation of Taro USA after accounting for liabilities (nearly all of which are purported debts or loans owed to Taro Canada and/or Taro Israel) was neutral or negative.[13]

63.    The cash and profits generated by Taro USA's sales were funneled to Taro Canada, which amassed more than $700 million in cash and liquid assets.[14] Those past and continuing transfers of profits from Taro USA to Taro Canada and Taro Israel—which were effectuated at least in part in an attempt to evade liability to Plaintiffs in the *Generic Drugs Antitrust* MDL—have served to deplete and continue to deplete the financial wherewithal of Taro USA and leave it unable to satisfy its outsized liabilities to Plaintiffs.

64.    Because Taro Israel, Taro Canada and Taro USA were run as a fully integrated enterprise, it did not matter to Taro Israel if, for accounting purposes, the enterprise booked losses in the Taro USA entity. The economic reality was that the Taro enterprise was generating positive cash flows and profits such that it was worth approximately $2 billion.

65.    Standing alone, however, Taro USA's assets and reserves are woefully inadequate to cover its liabilities to EPPs, let alone the numerous other creditors from which it faces liability. As it has done previously, in the face of this substantial liability, Taro USA continues to funnel cash from operations up to parent entities. However, whereas in the past, this cash was accumulating in Taro Canada and Taro Israel, which by law (and as acknowledged by Taro in

---

[12] Taro USA 2024 Balance Sheet, available at: https://sunpharma.com/wp-content/uploads/2024/07/Taro-Pharmaceuticals-U.S.A.-Inc.pdf.

[13] *Id*.

[14] Taro Canada 2024 Balance Sheet, available at: https://sunpharma.com/wp-content/uploads/2024/07/Taro-Pharmaceuticals-Inc.pdf.

statements and deeds) bore responsibility for the liabilities of Taro USA, that cash and value has now been captured by and merged into Sun Pharma, leaving Taro USA *de facto* insolvent and severed from the formerly integrated Taro Israel and Taro Canada assets.

66.     Taro USA is no longer an essential unit of the integrated Taro enterprise. Now that Taro is fully merged into Sun Pharma, the Taro USA entity—which served as the sole and essential sales arm for Taro in the United States—is superfluous, as Sun Pharma has other paths to sell generic drugs in the United States.

67.     With the completion of the merger, Taro USA, Taro Canada and Taro Israel have become completely private entities and Taro has been de-listed from the New York Stock Exchange. Taro is no longer required to make public financial disclosures. Sun Pharma and its affiliates can restructure the entities, remove cash and other value, and do as they please with the Taro entities without any disclosure to Taro's creditors.

68.     Almost immediately after the merger was completed on June 24, 2024, Sun Pharma began re-structuring the companies, and ceased reporting Taro financials separately from those of Sun. During the Sun Pharma Aug. 1, 2024 Earnings Call, the CFO announced: "From this quarter, we are reporting Taro financials as part of the combined entity." As explained by Dilip Shanghvi on Sun Pharma's next Earnings Call on Oct. 28, 2024: "We can't look at [them] separately. We can't run two separate businesses. [Taro]'s now part of Sun." Sun Pharma's CFO reminded analysts that Taro financials were no longer being reported, "since it is no more [a] public company [and is] part of the Sun [enterprise], we are just showing the overall net sales of the US business, which includes Taro."

69.     In sum, after the merger, Sun Pharma became the alter ego of the Taro enterprise and has continued the Taro business that existed prior to the merger.

***The Merger Was an Actual Fraudulent Transfer***

70.     The Sun/Taro merger was undertaken by all Defendants to hinder, delay, or defraud Plaintiffs and the EPP Creditor Class within the meaning of NY Debt & Cred L § 273. Like other statutes targeting actual fraudulent transfers, New York's Voidable Transaction Act sets forth a list in § 273(b) of so-called 'badges of fraud' that a court may consider "[i]n determining actual intent." As the reporter for the Uniform Voidable Transactions Act (the uniform act on which the New York Voidable Transactions Act derives) has written, "[F]or centuries courts applying the modern statutes or similar laws have interpreted the reference to 'intent' to minimize or eliminate the significance of the debtor's mental state. Courts have used different tools for that purpose. The so-called 'badges of fraud' are one such tool." Kenneth C. Kettering, The Uniform Voidable Transactions Act; or, the 2014 Amendments to the Uniform Fraudulent Transfer Act, 70 BUS. LAW. 777, 809 (2015).

71.     Seven badges of fraud are present here. First, as alleged above, the merger involved transfers "to an insider," as all of the Taro and Sun Pharma entities are related. NY Debt & Cred L § 273(b)(1).

72.     Second, because Taro has been taken private and Sun Pharma no longer makes public financial disclosures about Taro entities and the ongoing restructuring of those entities, some of the relevant transfers have been or will be "concealed." NY Debt & Cred L § 273(b)(3).

73.     Third, because EPPs filed suit against Taro USA before the merger and before the transfer of value from Taro USA to other related entities, it is clear that "[b]efore the transfer was made or obligation was incurred, [Taro USA] had been sued or threatened with suit." NY Debt & Cred L § 273(b)(4).

74.     Fourth, as described above, the merger effectively transferred "substantially all" of the Taro entities' accumulated value to Sun Pharma. NY Debt & Cred L § 273(b)(5).

75.     Fifth, as described above, Taro USA has "removed…assets" by funneling (and continuing to funnel) all profits up to Taro parent entities, and those parent entities (Taro Canada and Taro Israel) have removed accumulated profits derived from Taro USA into Sun Pharma through the merger, which integrated the companies into Sun Pharma's global operations. Moreover, now that Taro has been delisted from the New York Stock Exchange and Sun Pharma has ceased making public financial disclosures about Taro, the removal of assets from Taro entities has been or will be "concealed." NY Debt & Cred L § 273(b)(7).

76.     Sixth, "[t]he value of the consideration received by [Taro USA, Taro Canada and Taro Israel] was [NOT] reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred." NY Debt & Cred L § 273(b)(8). Pursuant to merger agreement between Sun Pharma and Taro Israel, all of Taro's operations have been integrated into Sun Pharma. Whereas in the past, Taro USA's value was consolidated in Taro Canada and Taro Israel, all of which remained liable for Taro USA's conduct, after the merger, the liability is left to Taro USA alone as Sun Pharma has captured the accumulated value in Taro Canada and Taro Israel and merged it into Sun Pharma. As Sun Pharma admitted during the negotiations to buy Taro, the litigation liabilities faced by the Taro enterprise were significant. The merger enabled Sun Pharma to capture the accumulated value in the Taro entities that was generated by Taro USA—including through the sale of the price-fixed drugs at issue in the *Generic Drug Antitrust* MDL—and leave Taro USA holding the full antitrust liability, which far exceeds any value that Taro received in the merger.

77.     Seventh, "[Taro USA] was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." NY Debt & Cred L § 273(b)(9). As described above, Taro Israel operated as an integrated enterprise in which Taro USA, although the main economic engine for the enterprise, was, as an accounting matter, run at a loss and structured to have neutral or negative value. For all practical purposes, Taro Israel managed Taro USA with the ultimate objective of transferring value and profits to the Taro organization as a whole, including the illegal profits that arose from the conspiracy alleged in EPPs' complaints. Unlike a typical corporate defendant that would at least retain substantial parts of its ill-gotten gains for payment of antitrust damages, Taro USA was stripped of those illegal profits throughout the price-fixing conspiracy. Sun Pharma is continuing this practice of extracting any profits from Taro USA's revenues that would otherwise be available to satisfy Taro USA's creditors.

*The Merger Was a Constructive Fraudulent Transfer*

78.     Even without regard to Defendants' actual fraudulent intent to hinder, delay, or defraud the EPP Creditor Class, the merger constitutes a constructive fraudulent transfer without regard to intent within the meaning of NY Debt & Cred L § 273.

79.     First, the "transfer[s] made [and] obligations incurred by [the Taro entities] … [were] without receiving a reasonably equivalent value in exchange … and [Taro] was … or … became insolvent as a result of the transfer[s] [and] obligation[s]." NY Debt & Cred L § 274(a).

80.     Second, the merger—which, as described above, involved transactions between insiders—enabled Sun Pharma, which dominated and controlled the Taro entities, to take value from the Taro entities to satisfy debts owed to entities dominated and controlled by Sun Pharma before satisfying debts owed to non-insider creditors, including EPPs. At the time, Sun Pharma

knew, or had reasonable cause to believe, that the Taro entities were or would become insolvent as a result of the merger of value from Taro into Sun Pharma. NY Debt & Cred L § 274(b).

### Class Action Allegations

81.    Plaintiffs bring this action on their behalf and as a class action under Rules 23(a), 23(b)(1), and 23(b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "EPP Creditor Class" or the "Class"):

82.    All persons and entities who hold an unliquidated claim against Taro USA as a member of one of the proposed Damages Classes identified in the Taro USA EPP Complaints in the *Generic Drug Antitrust* MDL.

83.    While Plaintiffs do not know the exact number of members of the EPP Creditor Class, Plaintiffs believe there are thousands of members in the EPP Creditor Class.

84.    Common questions of law and fact exist as to all members of the EPP Creditor Class, including:

(a)    Whether Taro USA, Taro Canada and Taro Israel operated as an integrated enterprise;

(b)    Whether Taro Israel dominated Taro Canada and Taro USA;

(c)    Whether Sun Pharma dominated Taro Israel, Taro Canada, and/or Taro USA;

(d)    Whether Dilip Shanghvi dominated Sun Pharma;

(e)    Whether Dilip Shanghvi dominated Taro Israel, Taro Canada and/or Taro USA;

(f)    Whether, in connection with the Sun/Taro merger, Taro USA, Taro Canada and/or Taro Israel transferred or will transfer valuable assets to Sun Pharma and

affiliated Sun Pharma Defendants;

(g)    Whether, in connection with the merger, Taro USA, Taro Canada and/or Taro Israel incurred obligations;

(h)    Whether the transfers made and obligations incurred by Taro USA, Taro Canada and/or Taro Israel in connection with the merger were made and/or incurred with actual intent to hinder, delay, or defraud the creditors of Taro USA, Taro Canada, and/or Taro Israel;

(i)    Whether the value of the consideration received by Taro USA, Taro Canada and/or Taro Israel in connection with the merger was not reasonably equivalent to the value of the transfers and/or the amount of the obligations incurred;

(j)    Whether Taro USA was insolvent or became insolvent as a result of or shortly after the merger;

(k)    Whether the remaining assets of Taro USA will be insufficient to satisfy its outstanding liabilities, including the multi-billion-dollar contingent liability based on the EPP Creditor Class's antitrust and related state law claims; and

(l)    Whether Taro USA's transfers to Taro Canada and/or Taro Israel, and Taro USA's, Taro Canada's and/or Taro Israel's transfers to Sun Pharma, and the incurrence of obligations to Sun Pharma and affiliated entities are voidable under the New York Voidable Transactions Act to the extent necessary to satisfy the claims of the EPP Creditor Class.

85.    Plaintiffs' claims are typical of the claims of the members of the EPP Creditor Class. Plaintiffs and all members of the EPP Creditor Class are similarly affected by Defendants' wrongful conduct, which has impeded the ability of all members of the EPP Creditor Class to

recover billions of dollars owed to them because of Defendants' illegal conduct in pricing generic pharmaceuticals. Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the EPP Creditor Class.

86.     Plaintiffs will fairly and adequately protect the interests of the EPP Creditor Class. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the EPP Creditor Class. Plaintiffs are represented by competent and experienced counsel who have diligently prosecuted claims on behalf of the EPP Creditor Class in the *Generic Drug Antitrust MDL* since 2016.

87.     Prosecuting separate actions by individual members of the EPP Creditor Class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

88.     Adjudications with respect to individual members of the EPP Creditor Class would, as a practical matter, be dispositive of the interests of the other members or would substantially impair or impede their ability to protect their interests.

89.     Defendants have acted or refused to act on grounds that apply generally to the EPP Creditor Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the EPP Creditor Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Actual Fraudulent Conveyance
### New York Voidable Transactions Act, NY Debt & Cred L § 273
### (Against All Defendants)

90.     Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

91.     EPPs are Creditors as that term is defined in NY Debt & Cred L § 270.

92.     The claims asserted by EPPs in the *Generic Drug Antitrust* MDL are Claims as that term is defined in NY Debt & Cred L § 270.

93.     Taro USA has transferred or will transfer valuable assets to Taro Canada and/or Taro Israel and incurred substantial obligations in connection with the Sun/Taro merger.

94.     Taro USA, Taro Canada and/or Taro Israel have transferred or will transfer valuable assets to Sun Pharma and related affiliates and incurred substantial obligations in connection with the Sun/Taro merger.

95.     The transfers made and obligations incurred by Taro USA, Taro Canada, and/or Taro Israel were made or incurred with actual intent to hinder, delay, or defraud Taro USA's creditors, including EPPs, as evidenced by, among other things, the following "badges" of fraud:

  a.     The transfers made and obligations incurred by insiders, including Taro USA, Taro Canada, Taro Israel, Taro Merger Sub, Sun Pharma, TDC, SPH, and Alkaloida;

  b.     Some of the relevant transfers have been or will be "concealed";

  c.     Before the transfer was made or obligation was incurred, Taro USA had been sued by EPPs and other plaintiffs in the *Generic Drug Antitrust* MDL;

  d.     The Sun/Taro merger effectively transferred "substantially all" of the Taro entities' accumulated value to Sun Pharma;

  e.     Taro USA has "removed or concealed assets" by funneling (and continuing to funnel) all profits up to Taro parent entities, and those parent entities (Taro Canada and Taro Israel) have removed accumulated profits derived from Taro USA into Sun Pharma through the merger, and in the absence of public financial disclosures about Taro, the removal of assets from Taro entities has been or will be "concealed";

f.    The value of the consideration received by Taro USA was not reasonably equivalent to the value of the assets transferred or the amount of the obligations incurred; and

g.    Taro USA was insolvent or became insolvent shortly after the transfer was made or the obligations were incurred because, among other things, it does not have enough capital available to meet its litigation liabilities.

96.    Plaintiffs seek a judicial declaration that the transfers of assets by Taro USA to Taro Canada and Taro Israel, and/or the transfer of assets by Taro USA, Taro Canada and Taro Israel to Sun Pharma and related Sun Pharma affiliates are voidable under NY Debt & Cred L § 273 to the extent necessary to satisfy EPPs' claims, along with such other equitable relief as may be appropriate.

97.    An actual case or controversy exists between Plaintiffs and Defendants regarding whether the transfer of assets by Taro USA to Taro Canada and Taro Israel, and/or by Taro USA, Taro Canada and Taro Israel to Sun Pharma and related Sun Pharma affiliates are voidable under NY Debt & Cred L § 273 to the extent necessary to satisfy Plaintiffs' claims. Accordingly, the declaratory judgment sought is justiciable.

### COUNT II
### Constructive Fraudulent Conveyance
### New York Voidable Transactions Act, NY Debt & Cred L § 274
### (Against All Defendants)

98.    Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

99.    EPPs are Creditors as that term is defined in NY Debt & Cred L § 270.

100.    The claims asserted by EPPs in the *Generic Drug Antitrust* MDL are Claims as that term is defined in NY Debt & Cred L § 270.

101.    Taro USA has transferred or will transfer valuable assets to Taro Canada and/or Taro Israel and incurred substantial obligations in connection with the Sun/Taro merger.

102.    Taro USA, Taro Canada and/or Taro Israel have transferred or will transfer valuable assets to Sun Pharma and related affiliates and incurred substantial obligations in connection with the Sun/Taro merger.

103.    Taro USA, Taro Canada and/or Taro Israel have transferred or will transfer such assets without receiving a reasonably equivalent value in exchange, as a result of which the remaining assets of Taro USA will be insufficient to satisfy outstanding liabilities, including the multi-billion-dollar contingent liability based on EPPs' antitrust and related state law claims.

104.    At the time of the transfer, Taro USA was engaged or was about to engage in a business or a transaction for which the remaining assets of Taro USA were unreasonably small in relation to the business or transaction.

105.    At the time of the transfer, Taro USA intended to incur, or believed or reasonably should have believed that Taro USA would incur, debts beyond its ability to pay as they become due.

106.    The claims asserted by EPPs in the *Generic Drug Antitrust* MDL arose before the transfer was made.

107.    Taro USA has transferred or will transfer such assets without receiving a reasonably equivalent value in exchange, as a result of which the remaining assets of Taro USA will be insufficient to satisfy outstanding liabilities, including the multi-billion-dollar contingent liability based on EPPs' antitrust and related state law claims.

108.    As a result of these transfers, Taro USA will become insolvent.

109.    In addition, the merger enabled Sun Pharma, which dominated and controlled the

28

Taro entities, to take value from the Taro entities to satisfy debts owed to entities dominated and controlled by Sun Pharma before satisfying debts owed to non-insider creditors, including EPPs.

110.    Plaintiffs seek a judicial declaration that the transfers of assets by Taro USA to Taro Canada and Taro Israel, and/or the transfer of assets by Taro USA, Taro Canada and Taro Israel to Sun Pharma and related Sun Pharma affiliates are voidable under NY Debt & Cred L § 274 to the extent necessary to satisfy EPPs' claims, along with such other equitable relief as may be appropriate.

111.    An actual case or controversy exists between Plaintiffs and Defendants regarding whether the transfers of assets by Taro USA to Taro Canada and Taro Israel, and/or the transfer of assets by Taro USA, Taro Canada and Taro Israel to Sun Pharma and related Sun Pharma affiliates are voidable under NY Debt & Cred L § 274 to the extent necessary to satisfy EPPs' claims. Accordingly, the declaratory judgment sought is justiciable.

## COUNT III
## Civil Conspiracy
## (Against All Defendants)

112.    The purpose of the Sun/Taro merger was, at least in part, to allow Sun Pharma to seize the accumulated value in the Taro enterprise and to leave Taro's litigation creditors, including EPPs, without recourse to recover the debts owed by the Taro entities.

113.    Each party to the Sun/Taro merger agreement—Sun Pharma, Taro Israel, SPH, TDC, Alkaloida and Taro Merger Sub—participated in the effort to transfer value out of the Taro enterprise and to Sun Pharma and its affiliates to the detriment of Taro's creditors.

114.    Each party to the Sun/Taro merger knew, or reasonably should have known, that depriving Taro's creditors of value was one of the intended purposes of the Sun/Taro merger.

**COUNT IV**
**Piercing the Corporate Veil**
**(Against Taro Canada and Taro Israel)**

115.    Taro Israel operated the Taro enterprise, including its subsidiaries, Taro USA and Taro Canada, as a fully integrated entity without respect to corporate formalities.

116.    Taro Israel dominated and controlled Taro Canada and Taro USA.

117.    The Taro entities engaged in insider transactions.

118.    The Taro enterprise shared and pooled essential functions across the Taro organizations.

119.    The Taro enterprise shared executives, leadership and management responsibilities across the Taro organizations.

120.    Plaintiffs seek a judicial declaration that Taro USA, Taro Canada and Taro Israel operated as an integrated enterprise without respect for corporate formalities and that Taro Canada and Taro Israel are liable for the conduct of Taro USA.

121.    An actual case or controversy exists between Plaintiffs and Defendants regarding whether Taro USA, Taro Canada and Taro Israel disregarded corporate formalities. Accordingly, the declaratory judgment sought is justiciable.

**COUNT V**
**Piercing the Corporate Veil**
**(Against Sun Pharma)**

122.    At all relevant times, Sun Pharma dominated and controlled Taro Israel, Taro Canada and Taro USA.

123.    Sun Pharma dominated and controlled every party to the Sun/Taro merger agreement.

124.    At all relevant times, Sun Pharma directors and executives held roles in all Defendants to this action.

125.    Sun Pharma has engaged and continues to engage in insider transactions with at least the Taro entities.

126.    After the Sun/Taro merger, Sun Pharma continued to control and dominate Taro USA, Taro Canada and Taro Israel.

127.    After the Sun/Taro merger, Sun Pharma continued the same business as conducted by the Taro enterprise prior to the merger.

128.    Plaintiffs seek a judicial declaration that Sun Pharma dominated and controlled Taro USA, Taro Canada and/or Taro Israel, and has merged the Taro entities into Sun Pharma's operations, and has continued the Taro enterprise's business, and that Sun Pharma operates as the alter ego of the Taro enterprise.

129.    An actual case or controversy exists between Plaintiffs and Defendants regarding whether Sun Pharma dominates and controls Taro USA, Taro Canada and/or Taro Israel and operates as an alter ego of the Taro enterprise. Accordingly, the declaratory judgment sought is justiciable

## COUNT VI
## Successor Liability
## (Against Sun Pharma)

130.    In conjunction with the Sun/Taro merger, all of the assets and liabilities of Taro USA, Taro Canada, and Taro Israel were merged into and been subsumed by Sun Pharma.

131.    As creditors of Taro USA, Taro Canada and Taro Israel before the merger, EPPs are now creditors of Sun Pharma for the debts arising from Taro USA's conduct at issue in the *Generic Drug Antitrust* MDL.

132.    Plaintiffs seek a judicial declaration that Sun Pharma is the successor in interest of Taro USA, Taro Canada and/or Taro Israel, and has merged the Taro entities into Sun Pharma's

operations, and has continued the Taro enterprise's business, and that Sun Pharma operates as the alter ego of the Taro enterprise

133.     An actual case or controversy exists between Plaintiffs and Defendants regarding whether Sun Pharma is the successor in interest of Taro USA, Taro Canada and/or Taro Israel and thus liable for the debts owed to Plaintiffs by the Taro entities. Accordingly, the declaratory judgment sought is justiciable

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request relief and judgment as follows:

(a)     Declaring that the transfers of assets by Taro USA, Taro Canada and/or Taro Israel to Sun Pharma and Sun Pharma affiliates are voidable under the New York Voidable Transactions Act to the extent necessary to satisfy EPPs' claims in the *Generic Drug Antitrust* MDL;

(b)     Declaring that Sun Pharma and related affiliates, Taro Israel, and Taro Canada remain liable to Plaintiffs for the amount of any judgment they obtain against Taro USA;

(c)     Awarding Plaintiffs their reasonable costs and expenses incurred in this action; and

(d)     Granting such other equitable and further relief as the Court may deem just and proper.

Dated: June 23, 2025                              Respectfully submitted:

*/s/ Roberta D. Liebenberg*
Roberta D. Liebenberg
Paul Costa
Adam J. Pessin
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
215-567-6565
rliebenberg@finekaplan.com
pcosta@finekaplan.com
apessin@finekaplan.com

Dan Drachler (*pro hac vice* forthcoming)
**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco CA 94111-3359
ddrachler@lchb.com

William J. Leonard
**OBERMAYER REBMANN MAXWELL
& HIPPEL LLP**
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102-2101
William.Leonard@obermayer.com

Deborah R. Willig
**WILLIG, WILLIAMS & DAVIDSON**
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
dwillig@wwdlaw.com

*Counsel for Plaintiffs and the Class*